# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Tou T.,[1]

               Petitioner,                      Case No. 26-cv-1670 (PJS/LIB)

    v.

                                              **REPORT AND RECOMMENDATION**

Kristi Noem, et al.,

               Respondents.

---

Pursuant to a referral made in accordance with 28 U.S.C. § 636, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Tou T.'s Petition for a writ of habeas corpus. [Docket No. 1]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

For the reasons discussed herein, the undersigned recommends that Petitioner Tou T.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein; that Respondents be ordered to immediately release Petitioner in Minnesota upon the issuance of any Order adopting the present Report and Recommendation with confirmation of Petitioner's release to be filed with the Court within forty-eight hours of said Order; and that Respondents be required to release Petitioner with all his personal effects seized during his arrest, as well as, all identification documents and immigration documentation.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claim would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983).

I.      **Background**[3]

Petitioner is a native of Laos and a member of the Hmong ethnic minority. (See Petition [Docket No. 1] ¶ 15). Petitioner first entered the United States in 1982 as a refugee when he was three weeks of age. (Id. ¶ 1). On August 14, 1984, Petitioner received status as a lawful permanent resident retroactive to 1982. (See Id. ¶¶ 2, 24).

After Petitioner was convicted of a criminal offense in 2003, the Department of Homeland Security initiated removal proceedings against him, and on April 18, 2005, an immigration judge ordered Petitioner removed to Laos. (Removal Order [Docket No. 6-2]). On April 25, 2005, Petitioner was released from the term of imprisonment underlying his criminal conviction and taken into custody by Immigration and Custom Enforcement ("ICE"). (Robinson Dec. [Docket No. 6] ¶ 10). At that time, Laos was not accepting repatriated individuals, and ICE was unable to effectuate Petitioner's removal. Because ICE was unable to effectuate Petitioner's removal "during the period prescribed by law," Petitioner was released from ICE's custody pursuant to an Order of Supervision on July 28, 2005. (Order of Supervision [Docket No. 6-3]). Since his release from ICE's custody and for more than twenty years, Petitioner has remained compliant with the conditions imposed by his Order of Supervision. (Petition [Docket No. 1] ¶¶ 26–27).

On December 11, 2025, ICE officers arrested Petitioner in Minnesota outside his residence as part of Operation Metro Surge. (Id. ¶ 28). At the time of Petitioner's arrest, the ICE officers did not possess a warrant authorizing Petitioner's arrest, and the ICE officers, at the time

---

[3] Petitioner and Respondents largely agree on the relevant facts contained in the Petition. To the extent Respondents do not contest specific factual allegations contained in the Petition, those allegations are deemed admitted. See, e.g., Jose A. v. Noem, No. 26-cv-480 (JMB/ECW), 2026 WL 172524, at *1 n.2 (D. Minn. Jan. 22, 2026) (citing Bland v. California Dep't of Corr., 20 F.3d 1469, 1474 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000)); Paula G. v. Bondi, No. 26-cv-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

of Petitioner's arrest, did not provide Petitioner with any documentation indicating the basis for arresting Petitioner. (Id. ¶¶ 5–6, 28).

On December 16, 2025, ICE issued a "Notice of Revocation of Release" which purports to revoke Petitioner's supervised release. (Notice of Revocation of Release [Docket No. 6-4]). In relevant part, the Notice of Revocation of Release provides as follows:

> On April 18, 2005, you were ordered removed to Laos by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal. On July 28, 2005, ICE released you from custody on an Order of Supervision. You have not been complaint with the terns [sic] of your release. Additionally, due to changes in circumstances, ICE will pursue new efforts to remove you to Laos.

(Id.).

On January 19, 2026, Respondents requested travel documents for Petitioner to effectuate Petitioner's removal to Laos. (Robinson Dec. [Docket No. 6] ¶ 13). On January 30, 2026, Laos issued travel documents for Petitioner. (Id.).

Petitioner initiated this action on February 27, 2026. (See Id.). As relief, Petitioner seeks his immediate release from detention. (See Id. ¶ 11, Prayer for Relief). Petitioner argues that his release is warranted because Respondents failed to comply with the statutory requirements before revoking his supervised release and that failure represents a violation of Petitioner's due process rights as secured by the United States Constitution. (See Id.).

Respondents filed their response on March 2, 2026. (Mem. [Docket No. 5]). Respondents' memorandum is, however, entirely unresponsive to the present Petition. (See Id.). For example, Respondents mischaracterize Petitioner's challenge here as a challenge to only the length of his detention. (See Id.) (discussing Zadvydas v. Davis, 533 U.S. 678 (2001)). Respondents' memorandum goes on to proffer arguments on that basis and only on that basis. The problem, however, is that Petitioner's argument is not so limited as characterized by

Respondents. (See Petition [Docket No. 1]). The present Petition explicitly and in no uncertain terms challenges the constitutionality of Petitioner's arrest and his redetention arguing that Respondents violated his due process rights by failing to comply with the statutory requirements in revoking his supervised release and that Respondents have no statutory basis for either his arrest or redetention while he remained compliant with his conditions of supervision. (See Id. ¶¶ 8, 29–31, 41–46). Respondents simply fail to provide any substantive response to the core of Petitioner's arguments.[4]

## II.    Discussion

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025)

---

[4] Respondents' failure to respond to Petitioner's arguments regarding the unconstitutional revocation of his release "mean[s] Respondents waived any challenge to [Petitioner's] arguments," and it represents a sufficient basis to grant habeas relief to Petitioner in the form of his immediate release from ICE's custody. Marina C. v. Bondi, No. 26-cv-494 (ECT/DJF), 2026 WL 194043, at *1 (D. Minn. Jan. 24, 2026) (citing Espey v. Nationstar Mortg., LLC, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014)); see, e.g., Ihor D., v. Noem, No. 26-cv-351 (JMB/DTS), 2026 WL 146507, at *1 (D. Minn. Jan. 20, 2026); Diego L. v. Bondi, No. 26-cv-382 (JMB/DJF), 2026 WL 145206, at *3 (D. Minn. Jan. 20, 2026); Singh v. Castro, No. 26-cv-168 (JB/JFR), 2026 WL 473203, at *3 (D.N.M. Feb. 19, 2026); Yi Xing v. Anda-Ybarra, No. 26-cv-306 (JB/JMR), 2026 WL 637091, at *4 (D.N.M. Mar. 6, 2026); Lakshay None v. Dora Castro, No. 26-cv-195 (JB/JFR), 2026 WL 497327, at *3 (D.N.M. Feb. 23, 2026); Paula G. v. Bondi, No. 26-cv-410 (JMB/DLM), 2026 WL 146003, at *3 n.4 (D. Minn. Jan. 20, 2026); Juan M. v. Bondi, No. 26-cv-266 (ECT/JFD), 2026 WL 129059, at *2 (D. Minn. Jan. 17, 2026). Although the Court could recommend the present Petition be granted on this basis alone, the Court will nevertheless consider the merits of the Petition.

(citing <u>Aditya W. H. v. Trump</u>, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); <u>Walker v. Johnston</u>, 312 U.S. 275, 286 (1941)).

In the United States, immigration law permits "authorized immigration officials to detain some classes of [noncitizens] during the course of certain immigration proceedings" <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 286 (2018). For example, 8 U.S.C. § 1231 provides that after an individual is ordered removed from the United States, immigration officials "shall detain the" individual "[d]uring the removal period[.]" 8 U.S.C. § 1231(a)(2)(A). The removal period is a "period of 90 days" and under circumstances like the present case, the removal period "begins on . . . [t]he date the order of removal  becomes administratively final." 8 U.S.C. § 1231(a)(1).

When an individual becomes subject to a final order of removal and the removal period expires without the individual being removed, specific regulations and statutes control the government's ability to detain, release, and revoke the release of the individual. <u>See, e.g.</u>, 8 U.S.C. § 1231; 8 C.F.R. §§ 241.4, 241.13. Once such an individual is released from custody pursuant to conditions of supervision, ICE's ability to redetain that individual is constrained by ICE's own regulations, 8 C.F.R. § 241.4 and 241.13. If ICE previously determined that there was no significant likelihood of removal of said individual in the reasonably foreseeable future, then § 241.13 applies; otherwise, § 241.4 applies. <u>See</u> 8 C.F.R. §§ 241.13(a), (b)(1), (g).

When an individual is released pursuant to conditions under § 241.13, that release can be revoked on two grounds: violation of supervised release or changed circumstances. 8 C.F.R. § 241.13(i). Under the latter, ICE "may revoke an [individual's] release . . . and return the [individual] to custody if, on account of changed circumstances," ICE "determines that there is a significant likelihood that the [individual] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In either scenario—violation of supervised release or changed

circumstances—the regulations require ICE to notify the individual "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to [ICE's] custody to afford the [individual] an opportunity to respond to the reasons for revocation stated in the notification. The [individual] may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [sic] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3). It is ICE's burden to demonstrate that "changed circumstances" justify the revocation of release. See, e.g., Roble v. Bondi, 803 F. Supp. 3d 766, 772–73 (D. Minn. 2025); Escalante v. Noem, No. 25-cv-182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150–51 (D. Mass. 2025).

"The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." Bulle v. Wesling, No. 26-cv-19 (JJM/AEM), 2026 WL 183840, at *2 (D.R.I. Jan. 23, 2026) (citing Jimenez v. Cronen, 317 F. Supp. 3d 626, 655 (D. Mass. 2018)). Noncitizens released pursuant to 8 C.F.R. § 241.13 under conditions of supervision maintain a protected liberty interest in their continued release. See Bulle, 2026 WL 183840, at *2; Villanueva v. Tate, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025) (discussing Zadvydas v. Davis, 533 U.S. 678 (2001); Young v. Harper, 520 U.S. 143 (1997); Morrissey v. Brewer, 408 U.S. 471 (1972)); Pedro O. v. Noem, No. 26-cv-361 (ECT/LIB), 2026 WL 608314, at *3 (D. Minn. Feb. 27, 2026), report and recommendation adopted, 2026 WL 615415 (D. Minn. Mar. 4, 2026). Accordingly, any attempt to redetain an individual who has been released under § 241.13 necessarily implicates the individual's constitutionally protected liberty interests. See Villanueva, 801 F. Supp. 3d at 704.

Consequently, "ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures." Bulle, 2026 WL 183840, at *2.

In the present case, the first requirement of § 241.13—that the removal period has expired—is clearly met. As Respondents acknowledge, Petitioner is subject to a removal order dated April 18, 2005. (See Removal Order [Docket No. 6-2]). That removal order became final on May 18, 2005, when Petitioner's time to appeal the removal order expired without Petitioner filing any such appeal. See 8 C.F.R. §§ 1003.38, 1241.1, 1252(a)(1), 1252 (b)(1). Petitioner's removal period thus began on that date, and the removal period expired ninety days later on August 16, 2005. That date has long since passed.

Because the removal period has expired, Petitioner's redetention is subject to the requirements of either § 241.4 or § 241.13. If ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, then § 241.13 applies. But if ICE has not previously made such a determination, then § 241.4 applies.

The record in the present case demonstrates that ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future, and therefore, § 241.13 governs Petitioner's redetention. The relevant statutory provisions provide that "[b]efore making any recommendation or decision to release a detainee," immigration officials "must conclude," among other things that "[t]ravel documents for the [individual] are not available or, in the opinion of [ICE], immediate removal, while proper, is otherwise not practicable or not in the public interest." 8 C.F.R. § 241.4(e); see 8 C.F.R. § 241.13(h)(1). This indicates that Petitioner's release was based on a decision that there was no significant likelihood of his removal in the reasonably foreseeable future.[5] Under these circumstances, the Court

---

[5] Moreover, the facts of the present case also demonstrate that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future at the time of his release on July 28, 2005. The only country to which

concludes "that ICE must have [necessarily] made a determination that 'there was no significant likelihood of removal in the reasonably foreseeable future'" prior to issuing the Petitioner's Order of Supervision. Pedro O., 2026 WL 608314, at *4 (quoting Pham v. Bondi, No. 25-cv-1157, 2025 WL 3477023, at *3 (W.D. Okla. Oct. 30, 2025), report and recommendation adopted, 2025 WL 3243870 (W.D. Okla. Nov. 20, 2025)) (citing Hamidi v. Bondi, No. 25-cv-1205, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025), report and recommendation adopted, 2025 WL 3452454 (W.D. Okla. Dec. 1, 2025); Claudio A.A. v. Bondi, No. 26-cv-742 (KMM/LIB), 2026 WL 468232, at *5 (D. Minn. Feb. 12, 2026), report and recommendation adopted, 2026 WL 478347 (D. Minn. Feb. 18, 2026)).

Because ICE previously determined that there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future and because the removal period has expired, ICE was required to satisfy the requirements of § 241.13(i) before revoking Petitioner's release. The question before the Court then is whether ICE complied with § 241.13(i).

Here, the record demonstrates that Respondents unequivocally failed to comply with any of § 241.13(i)'s requirements. As an initial matter, there is no indication that any authorized official actually revoked Petitioner's release prior to his arrest on December 11, 2025. Although Petitioner was arrested and has certainly been detained, Respondents do not offer any evidence, or even alleged, that Petitioner's arrest was made pursuant to a revocation of his release. In the absence of any evidence that an authorized immigration official "lawfully revoked" Petitioner's release prior to Petitioner's arrest, ICE's arrest and redetention of Petitioner without any other asserted basis for arresting and detaining Petitioner represents a patent violation of Petitioner's

---

Petitioner had been ordered removed is Laos, but at the time of Petitioner's July 28, 2005, release, Laos was not accepting Hmong deportees from the United States. See, e.g., Dipraseuth v. Noem, No. 25-cv-3471 JLS (BJW), 2025 WL 3677674, at *1, 3 (S.D. Cal. Dec. 18, 2025); Phouvieng K. v. Andrews, No. 25-cv-1512 (KES/SAB), 2025 WL 3265504, at *2, 6 (E.D. Cal. Nov. 24, 2025); United States v. Phtsadakone, No. 96-cr-616, 2025 WL 3771418, at *1, 3 (W.D. Wash. Dec. 31, 2025).

due process rights entitling him to habeas relief. See, e.g., Claudio A.A., 2026 WL 468232, at *5 (citing Villanueva, 801 F. Supp. 3d at 699–700).

Furthermore, assuming solely for the sake of argument that Petitioner's arrest was the result of an authorized official revoking Petitioner's release under § 241.13(i), Respondents still failed to comply with § 241.13(i)'s requirement that Petitioner be provided with prior notice of revocation. There is simply no indication in the record that Respondents provided Petitioner, prior to his arrest or even at the time of his arrest, with notice of the revocation of his supervised release as required by § 241.13(i)(3). Petitioner also alleges, and Respondents do not refute, that he did not receive any such notice at the time of his arrest. (See Petition [Docket No. 1] ¶ 5, 28–29).[6] The complete lack of the required notice prior to Petitioner's arrest as required by § 241.13(i)(3) represents a violation of Petitioner's due process rights and a sufficient, independent basis upon which to grant habeas relief to Petitioner. See, e.g., Tou V. v. Bondi, No. 26-cv-1381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026); Yeng X. v. Noem, No. 26-cv-1399 (JMG/ECW), 2026 WL 465220, at *1–2 (D. Minn. Feb. 18, 2026); Pha S. v. Noem, 26-cv-1539 (MJD/ECW), Order [Docket No. 8] at 9 (D. Minn. March 1, 2026); Si T.P. v. Noem, No. 26-cv-1445 (ECT/DJF), 2026 WL 575705, at *4 (D. Minn. Feb. 24, 2026), report and recommendation adopted, 2026 WL 593436 (D. Minn. Mar. 2, 2026); Roble, 803 F. Supp. 3d at 772; Claudio A.A., 2026 WL 468232, at *7; Villanueva, 801 F. Supp. 3d at 699–700; Bulle, 2026 WL 183840, at *6, 8–9; Faysal N. v. Noem, No. 25-cv-4641 (JMB/DLM), 2026 WL 36066, at *5 (D. Minn. Jan. 6, 2026); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 784–85 (D. Minn. 2025).

---

[6] Respondents did provide Petitioner with a Notice of Revocation of Release five days after his arrest, but post hoc notice of the revocation of an individual's supervised release is insufficient to satisfy the notice requirement of § 241.13(i). See, e.g., Tou V. v. Bondi, No. 26-cv-1381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026); Yeng X. v. Noem, No. 26-cv-1399 (JMG/ECW), 2026 WL 465220, at *1–2 (D. Minn. Feb. 18, 2026); Pha S. v. Noem, 26-cv-1539 (MJD/ECW), Order [Docket No. 8] at 9 (D. Minn. March 1, 2026); Si T.P., 2026 WL 575705, at *4.

Even if Respondents had provided the December 16, 2025, Notice of Revocation of Release to Petitioner before his arrest, that Notice of Revocation of Release is unduly vague and fails to meet the substantive requirement of § 241.13(i). To satisfy the substantive requirements of § 241.13(i), Respondents were required to inform Petitioner of the reasons for the revocation of his supervised release so that Petitioner could present evidence and information to rebut Respondents' purported reasons for revocation. In the present case, Respondents plainly failed to do so.

The December 16, 2025, Notice of Revocation of Release conclusory asserts that Petitioner has not been compliant with the terms of his supervised release, but it fails to inform Petitioner of how he allegedly violated the terms of his release. Similarly, the Notice of Revocation of Release asserts that "due to changed circumstances, ICE will pursue new efforts to remove" Petitioner to Laos, but it again fails to provide the Petitioner with any information about those "new efforts" or provide Petitioner with information regarding the alleged "changed circumstances." Generic, vague assertions like those in the Notice of Revocation of Release in the present case are insufficient to satisfy Respondents' statutory requirement to notify Petitioner of the reasons for the revocation of his release. See, e.g., Si T.P., 2026 WL 575705, at *4; Raciel Z.P. v. Noem, No. 26-cv-249 (KMM/SGE), 2026 WL 568266, at *4 (D. Minn. Feb. 13, 2026), report and recommendation adopted, 2026 WL 564251 (D. Minn. Feb. 27, 2026); Chou T. v. Noem, No. 26-cv-1432 (SHL/ECW), 2026 WL 607413, at *4 (D. Minn. Feb. 20, 2026), report and recommendation adopted, 2026 WL 613575 (D. Minn. Mar. 4, 2026); Sarail A., 803 F. Supp. 3d at 783–84; Kao Y. v. Noem, 26-cv-1403 (MJD/DLF), Order [Docket No. 13] at 9–10 (D. Minn. Feb. 26, 2026); Ban S. v. Bondi, 25-cv-4750 (PJS/ECW), Report and

Recommendation [Docket No. 8] at 7–8 (D. Minn. Jan. 17, 2026) (collecting cases), adopted Order [Docket No. 12] (D. Minn. Jan. 26, 2026).

As another Court in this District has explained, "Respondents' failure to notify [Petitioner] of the reasons for his revocation is significant because it prevented him from challenging the revocation. A noncitizen must be apprised of the specific reasons for revoking his supervised release so that he can present rebuttal evidence and argument at his informal interview." Si T.P., 2026 WL 575705, at *4 (citing 8 C.F.R. § 241.13(i)(3); Sarail A., 803 F. Supp. 3d at 781). Respondents' failure to provide Petitioner with adequate notice of the reasons for his revocation as required by § 241.13(i) is a violation of Petitioner's due process rights, and Respondents' failure here represents a sufficient, independent basis to grant habeas relief to Petitioner. See, e.g., Si T.P., 2026 WL 575705, at *4; Raciel Z.P., 2026 WL 568266, at *4–5; Chou T., 2026 WL 607413, at *4–5; Ban S. v. Bondi, 25-cv-4750 (PJS/ECW), Report and Recommendation [Docket No. 8] at 7–8 (D. Minn. Jan. 17, 2026); Kao Y. v. Noem, 26-cv-1403 (MJD/DLF), Order [Docket No. 13] at 9–11 (D. Minn. Feb. 26, 2026); Sarail A., 803 F. Supp. 3d at 783–84; Loc T. v. Bondi, No. 25-cv-4705 (PJS/DTS), 2026 WL 592072, at *1 (D. Minn. Mar. 3, 2026).

Respondents' lack of compliance with their own regulations does not end there. In addition to failing to provide Petitioner with the required notice of the reasons for the revocation of his release, Respondents—even looking outside the contents of the December 16, 2025, Notice of Revocation of Release—have wholly failed to demonstrate the existence of any proper grounds for revocation at the time of Petitioner's arrest. As noted above, when an individual is released pursuant to §241.13(i), like Petitioner, ICE can revoke that release on only two grounds: violation of supervised release or changed circumstances. Neither is present here. Respondents

do not challenge Petitioner's assertion that he was compliant with all conditions of release prior to his December 11, 2025, arrest.[7] Respondents also fail to identify any "changed circumstance" specific to Petitioner which would support the conclusion that, at the time of Petitioner's arrest, there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Respondents' failure to demonstrate a proper basis to revoke Petitioner's release under § 241.13(i) at the time of his arrest is another violation of Petitioner's due process rights, and Respondents' failure here represents a sufficient, independent basis to grant habeas relief to Petitioner. See, e.g., Claudio A.A., 2026 WL 468232, at *6 (citing Zhang Haixiang v. Dep't of Homeland Sec., No. 25-cv-1890, 2025 WL 3683126, at *3 (C.D. Cal. Dec. 2, 2025), report and recommendation, 2025 WL 3679184 (C.D. Cal. Dec. 18, 2025); Bulle, 2026 WL 183840, at *8; Faysal N., 2026 WL 36066, at *5; Sarail A., 803 F. Supp. 3d at 784–85).

As observed above, after Petitioner's arrest and redetention, Respondents obtained travel documents authorizing Petitioner's repatriation to Laos, but that does not alter the Court's analysis here because travel documents obtained after Petitioner's arrest and detention cannot cure Respondents' failure to comply with the due process requirements of § 241.13(i). See, e.g., Tou V., 2026 WL 458195, at *2–4 (granted habeas relief in the form of immediate release based on respondents' failure to comply with § 241.13 in a case where respondents obtained travel documents for the petitioner after petitioner's arrest and redetention); Chou T., 2026 WL

---

[7] The Notice of Revocation of Release conclusorily asserts that Petitioner violated the terms of his supervised release, but Respondents do not here argue or even allege that Petitioner violated the terms of his supervised release. (See Respondents' Mem. [Docket No. 5]). In their memorandum, Respondents acknowledge that the Notice of Revocation of Release alleges Petitioner violated the terms of his supervised release, but Respondents do not allege that Petitioner did so. (See Id. at 2 (noting only that the Notice of Revocation of Release "charged [Petitioner] with violating the terms of his release"); Id. at 7 n.2 ("Release can also be revoked if a noncitizen fails to comply with the terms of an order of supervision. That was a separate reason given for revoking [Petitioner's] supervision in this case." (citation omitted))). Respondents' memorandum is carefully worded so as not to allege Petitioner violated the terms of his supervised release while also noting that the generic, form letter did allege Petitioner violated the terms of his supervised release. Moreover, the veracity of the assertion in the Notice of Revocation of Release that Petitioner violated the terms of his supervised release is greatly diminished by the fact that Respondents have still failed to identify how Petitioner violated the terms of his supervised release, even three months after the Notice of Revocation of Release alleged that Petitioner had violated said terms.

607413, at *5 (same); <u>Yeng X.</u>, 2026 WL 465220, at *1–2  (same); <u>Pha S. v. Noem</u>, 26-cv-1539 (MJD/ECW), Order [Docket No. 8] at 7–9 (D. Minn. March 1, 2026). Respondents may not detain Petitioner and attempt to create a basis for that detention after the fact. <u>Tou V.</u>, 2026 WL 458195, at *3. That is simply "not how it works." <u>Id.</u>

In summation, Petitioner has shown that ICE's redetention of him on December 11, 2025, violated Petitioner's due process rights because ICE wholly failed to comply with its own regulations under § 241.13(i). Agencies such as ICE are required to follow their own federal regulations; the constitutional protections of due process require agencies to do so when detaining or redetaining an individual. <u>See, e.g.</u>, <u>Sarail A.</u>, 803 F. Supp. 3d at 779; <u>Faysal N.</u>, 2026 WL 36066, at *3; <u>Zhang Haixiang</u>, 2025 WL 3683126, at *3; <u>Bulle</u>, 2026 WL 183840, at *9; <u>Rondan Jarrett v. Raycraft</u>, No. 26-cv-244, 2026 WL 319044, at *9 (W.D. Mich. Feb. 6, 2026). When ICE fails to meet the requirements of § 241.13(i) in revoking an individual's release, the appropriate remedy is the individual's immediate release subject to no conditions beyond those previously imposed in the order effectuating the individual's initial release from ICE custody. <u>See, e.g.</u>, <u>Sarail A.</u>, 803 F. Supp. 3d at 785; <u>Chou T.</u>, 2026 WL 607413, at *4–5; <u>Yeng X.</u>, 2026 WL 465220, at *1–2; <u>Tou V.</u>, 2026 WL 458195, at *4; <u>Loc T.</u>, 2026 WL 592072, at *1–2; <u>Si T.P.</u>, 2026 WL 575705, at *3–5; <u>Raciel Z.P.</u>, 2026 WL 568266, at *6; <u>Faysal N.</u>, 2026 WL 36066, at *3–6; <u>Zhang Haixiang</u>, 2025 WL 3683126, at *3–4; <u>Bulle</u>, 2026 WL 183840, at *8–9; <u>Rondan Jarrett</u>, 2026 WL 319044, at *9–11; <u>Claudio A.A.</u>, 2026 WL 468232, at *8.[8]

---

[8] For all the reasons discussed herein, § 241.13(i) controls the revocation of Petitioner's release, and Respondents have wholly failed to comply with the requirements of § 241.13(i) which therefore entitles Petitioner to habeas relief. The Court notes, however, that even assuming solely for the sake of argument that the revocation of Petitioner's release was governed by § 241.4, Petitioner would still be entitled to the same habeas relief because Respondents have also wholly failed to comply with the due process requirements of § 241.4. For example, § 241.4(l)(2) requires the revoking official to make an individualized determination as to revocation including the consideration of certain statutory factors <u>before</u> revoking an individual's release, and there is no indication, or even

On that basis, the undersigned recommends that Tou T.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein. More specifically, the undersigned recommends that Respondents be ordered to immediately release Petitioner in Minnesota following the issuance of any Order adopting the present Report and Recommendation.[9] The undersigned further recommends that Respondents be required to confirm Petitioner's release within forty-eight hours of any Order adopting this Report and Recommendation.

### III.    Objection Period

The undersigned notes that one last issue merits discussion—the time in which the parties are permitted to object to the present Report and Recommendation, if they so choose. This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation, "within 14 days after being served with a copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1). A party may then respond to those objections within fourteen days after being served a copy of the objections. LR 72.2(b)(2). Thus, under normal circumstances a party would be permitted fourteen (14) days in which to file its objections to the present Report and Recommendation, if it chooses to object, and then the opposing party would be permitted an additional fourteen (14) days in which to file its response to said object, if it so chooses.

---

allegation, in the present case that an immigration official made such a finding prior to Petitioner's arrest on December 11, 2025. Similarly, there is no indication that Respondents have complied with § 241.4(l)'s requirement that, upon revocation of release, ICE must initiate a review process with notification to the individual of the process and make a determination as to whether revocation is warranted. In short, Respondents have arrested and redetained Petitioner with a complete lack of due process, and thus, Petitioner is entitled to habeas relief whether his circumstances are analyzed under § 241.4 or § 241.13(i).

[9] It is further recommended that upon Petitioner's release Respondents be ordered to return all of Petitioner's personal property and documentation he had with him at the time he was detained on December 11, 2025.

In the present case, however, Petitioner's unlawful detention would be unnecessarily further prolonged by this objection period to the point that the time limit in which the undersigned recommends Petitioner be released would be doubled fourteen times over by the end of the standard objection period. Put differently, if the parties were permitted the full objection period, comprised of twenty-eight days, then the relief recommended by the undersigned would be materially diminished.

Therefore, the Court, in its inherent power to manage pending litigation, reduces the time in which any party is permitted to object to the present Report and Recommendation to two (2) days, and correspondingly, the Court reduces to one (1) day the time in which any party is permitted to respond to any objection. An objection period of any longer duration would materially and unnecessarily undermine the recommended relief.

## IV.    Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Tou T.'s Petition for a writ of habeas corpus, [Docket No. 1], be **GRANTED**, as set forth herein;

2. Respondents be required to immediately release Petitioner in Minnesota without subjecting him to conditions greater than those specifically imposed in his July 28, 2005, Order of Supervision;

3. Respondents be required to release Petitioner with all his personal effects seized during his arrest, as well as, all identification documents and immigration documentation;

4.  Respondents be required to confirm Petitioner's release in Minnesota from custody within forty-eight (48) hours from the date of any Order adopting the present Report and Recommendation; and

5.  Respondents be precluded from redetaining Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.


Dated: March 11, 2026                                    s/Leo I. Brisbois
                                                         Hon. Leo I. Brisbois
                                                         U.S. MAGISTRATE JUDGE